IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CR No. 12-184 |
| | ) | |
| | ) | Washington, D.C. |
| vs. | ) | February 23, 2016 |
| | ) | 12:20 p.m. |
| ALFREDO BELTRAN LEYVA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

TRANSCRIPT OF PLEA HEARING
BEFORE THE HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:        AMANDA LISKAMM
                          ANDREA GOLDBARG
                          ADRIAN ROSALES
                          Assistant United States Attorney
                          555 4th Street, N.W.
                          Washington, D.C. 20036
                          (202) 252-7785
                          andrea.goldbarg@usdoj.gov

For the Defendant:         A. EDUARDO E. BALAREZO
                          Balarezo Law
                          400 5th Street N.W.
                          Suite 300
                          Washington, D.C. 20001
                          (202) 639-0999
                          info@balarezolaw.com

APPEARANCES CONTINUED:

Interpreter:               Teresa Salazar


Court Reporter:            William P. Zaremba, RMR, CRR
                           Official Court Reporter
                           U.S. Courthouse
                           333 Constitution Avenue, NW
                           Room 6511
                           Washington, D.C. 20001
                           (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

P R O C E E D I N G S

1

2          DEPUTY CLERK:  All rise.  This Honorable Court is

3     now in session.  The Honorable Judge Richard J. Leon

4     presiding.  God save the United States and this Honorable

5     Court.  Please be seated and come to order.

6          Your Honor, calling criminal Case No. 12-184, the

7     United States of America versus Alfredo Beltran Leyva.

8          The defendant is present in the courtroom,

9     Your Honor.

10          The interpreter who's present for these

11     proceedings is Ms. Salazar.  She has been sworn for the

12     record.

13          Will counsel for the parties please approach the

14     lectern and identify yourself for the record.

15          MS. GOLDBARG:  Good afternoon, Your Honor.

16     Andrea Goldbarg, Amanda Liskamm, Andrea Rosales,

17     Marcia Henry for the government.

18          Also present at government's table is our

19     paralegal, Angela Ancalle-Jimenez, and our case agent FBI

20     Special Agent Britton Boyd.

21          THE COURT:  Welcome.

22          MR. BALAREZO:  Good afternoon, Your Honor.

23     Eduardo Balarezo and Will Purpura on behalf of Alfredo

24     Beltran Leyva.

25          THE COURT:  Welcome.

1          All right, Mr. Balarezo.  As I understand it, your

2   client wishes to plead guilty today; is that correct?

3          MR. BALAREZO:  Yes, Your Honor.

4          Based on the government's factual proffer that was

5   presented in court last week, my client has decided that

6   it would be in his interest to plead to the indictment at

7   this time.

8          THE COURT:  Very good.

9          Because the indictment, as it is currently

10  constructed, is not consistent with the Court's prior ruling

11  and the Court's interpretation of the government of Mexico's

12  extradition agreement, the government needs to move to

13  dismiss those portions of the indictment relating to

14  allegations of illegal importation of heroin and marijuana

15  into the United States.  Does the government so move?

16         MS. GOLDBARG:  Yes, Your Honor.  Based on the

17  opinion by the government of Mexico limiting that the

18  defendant could not be tried for the drugs of heroin and

19  marijuana and also inconsistent with this Court's ruling

20  both with regards to the rule of specialty, the government

21  does so move to dismiss Count 1 to the defendant solely as

22  to heroin and marijuana.

23         THE COURT:  Very good.  The Court grants that

24  motion, and, therefore, the existing indictment which your

25  client wishes to plead to consists solely of the allegation

1   of illegal importation of conspiracy to illegally import

2   cocaine and methamphetamine into the United States.

3              He may come up and be sworn.

4              DEPUTY CLERK:  Please raise your right hand.

5              (Defendant is placed under oath.)

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  All right.  Mr. Beltran Leyva, as

8   I understand from your attorney, you wish to enter a plea of

9   guilty to the indictment; is that correct?

10              THE DEFENDANT:  Yes, Your Honor.

11              THE COURT:  I need to ask you certain questions to

12   ensure that you do understand your rights and to ensure that

13   your plea is a voluntary one.

14              If you don't understand any of my questions at any

15   time, please do not hesitate to ask me to stop, and you can

16   ask any question you have of your counsel or the Court or

17   both of us.  Do you understand?

18              THE DEFENDANT:  Yes, Your Honor.

19              THE COURT:  All right.  Now, I want to remind you,

20   sir, that you're under oath.  The answers you give to the

21   Court's questions could be used against you in a later

22   prosecution for perjury or making false statement if you

23   don't answer truthfully.  Do you understand that?

24              THE INTERPRETER:  Yes, Your Honor.

25              THE COURT:  Does counsel for either side have any

 1   questions as to the defendant's competence to enter a plea

 2   at this time?

 3              MR. BALAREZO:  No, Your Honor.

 4              MS. GOLDBARG:  Not for the government, Your Honor.

 5              THE COURT:  Mr. Beltran Leyva, do you feel

 6   competent to go forward today?

 7              THE DEFENDANT:  Yes, Your Honor.

 8              THE COURT:  Are you under the influence of any

 9   drugs or alcohol or anything that might cloud your judgment

10   or make you unable to understand these proceedings in any

11   way?

12              THE DEFENDANT:  No, Your Honor.

13              THE COURT:  Based on the representations of

14   counsel, based on the representations of defendant, based on

15   the Court's own observations of the defendant, the Court

16   finds he is fully competent and capable of entering an

17   informed plea.

18              Now, as I understand it, you wish to plead guilty

19   to Count 1 of the indictment as is currently constructed

20   after the Court granted the motion here, which is a

21   conspiracy to distribute 5 kilograms or more of cocaine and

22   50 grams or more of methamphetamine, intending and knowing

23   that such substances would be unlawfully imported into the

24   United States in violation of 21 U.S. Code.

25              Have you had an adequate time and opportunity to

1   discuss this case with your attorney, or attorneys, I should

2   say?

3                THE DEFENDANT:  Yes, Your Honor.

4                THE COURT:  Are you satisfied with your attorney's

5   representation of you?

6                THE DEFENDANT:  Yes, Your Honor.

7                THE COURT:  Now, let me ask you a few questions to

8   make sure you understand your rights under the

9   constitutional laws of the United States.

10               First of all, do you understand that you are

11  entitled to a trial by jury on the charge contained in this

12  indictment?

13               THE DEFENDANT:  Yes, Your Honor.

14               THE COURT:  All right.  Do you understand that if

15  there were a trial, you would be presumed to be innocent,

16  that the government would be required to prove you guilty by

17  competent evidence beyond a reasonable doubt.

18  Do you understand that?

19               THE INTERPRETER:  Yes, Your Honor.

20               THE COURT:  Do you understand that if there were a

21  trial, witnesses for the government would have to come to

22  court and testify in your presence, and your attorney,

23  attorneys, could cross-examine those witnesses and object to

24  any evidence offered by the government and, indeed, offer

25  evidence on your behalf.  Do you understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Furthermore, if there were a trial,

3    you would have a right to testify, but also would have a

4    right not to testify, and no inference or suggestion of

5    guilt could be drawn from the fact that you chose not to

6    testify.  Do you understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Now, if I accept your guilty plea,

9    you'll be waiving all of those rights, there will be no

10   trial, and I will enter a judgment of guilt against you.

11   Do you understand that?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  As a result, you would be waiving your

14   right against self-incrimination since you'll have to

15   acknowledge your guilt in order for me to accept your plea.

16   Do you understand that?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Now, the offense to which you're

19   pleading guilty is a felony offense.  If I accept your plea,

20   you will not only be found guilty of a felony, but you may,

21   as a result, be deprived of certain valuable civil rights,

22   such as the right to vote, the right to hold public office,

23   the right to perform certain jobs in both the public and

24   private sectors, the right to serve on a jury, and the right

25   to possess any kind of firearm.  Do you understand that?

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  Now, in your case, you were born

3    outside of the United States; is that correct?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  You were born in Mexico;

6    is that right?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  All right.  Well, as a result of being

9    in this country as an alien, there may very well be

10   consequences to your pleading guilty to this offense in the

11   form of immigration consequences, if you should ever wish to

12   re-enter the United States.

13             Do you understand that you would have very limited

14   opportunities in that regard?

15             Do you understand that?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Now, having gone over all these rights

18   with you, do you still wish to go forward with a plea of

19   guilty?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  All right.  Let me ask Mr. Balarezo.

22             Do you have a copy of the indictment there with

23   you?

24             MR. BALAREZO:  Yes, Your Honor.

25             THE COURT:  All right.  If you could place that in

1    front of the defendant, I'd appreciate it.

2            Let me ask you a few questions:  Do you waive

3    reading of the indictment, Mr. Balarezo?

4            MR. BALAREZO:  Yes, Your Honor.

5            THE COURT:  All right.

6            Mr. Beltran Leyva, this is the document that

7    contains the charge against you that you wish to enter a

8    guilty plea to.  It's a conspiracy to distribute 5 kilograms

9    or more of cocaine, and conspiracy to distribute 50 grams or

10   more of methamphetamine, intending and knowing that such

11   substances would be unlawfully imported into the

12   United States, in violation of 21 U.S. Code.

13           Have you seen this document before?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Have you had a chance to review it and

16   discuss it with your counsel?

17           THE DEFENDANT:  Yes.  I have consulted with my

18   attorney on all these things.

19           MR. BALAREZO:  Your Honor, if I just may

20   interject, Mr. Beltran Leyva does not speak English.

21   The document is in English, but I have gone over it with

22   him.

23           Additionally, when the government --

24           THE COURT:  You are fluent in Spanish, are you

25   not?

1          MR. BALAREZO:  I am, Your Honor.

2          THE COURT:  All right.

3          MR. BALAREZO:  And, additionally, when the

4  government requested his extradition, the documents that

5  were sent down were also in Spanish.  So he did receive a

6  copy in Spanish at one point.

7          THE COURT:  Very good.

8          And that's consistent with your recollection also,

9  isn't it, Mr. Beltran Leyva?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Very good.

12         So would it be fair to say you understand the

13  charge against you.  Wouldn't that be a fair statement?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  And you understand that, after

16  discussing this with your counsel, that the maximum penalty

17  for this offense is a term of life in prison, a fine not to

18  exceed $10 million, and a period of supervised release of at

19  least five years.

20         You understand that that's the maximum possible

21  punishment under the law, right?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  And your counsel has also discussed

24  with you, has he not, that there's a mandatory minimum

25  sentence that's required by law as to this particular

1  offense?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  And that mandatory minimum sentence is

4  a term of imprisonment of at least ten years.

5  You understand that, right?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  And there's no difference of opinion

8  on that issue, is there, between counsel?

9          You all agree that there's a mandatory minimum of

10  ten years?

11          MR. BALAREZO:  Based on the quantity, yes,

12  Your Honor.  Based on the charged offense.

13          THE COURT:  Very good.

14          The government agrees?

15          MS. GOLDBARG:  Yes, Your Honor.

16          THE COURT:  All right.

17          In addition, of course, you have to pay a special

18  assessment fee of $100 that's due and payable to our Clerk

19  of Court.

20          Now, your counsel has informed you, has he not,

21  that the Court will not be able to determine the exact

22  sentence that's applicable in your case until after a

23  presentence report has been completed that you and your

24  counsel and the government's counsel will all have an

25  opportunity to review and challenge any factual or legal

1  conclusion that's contained within it.

2  Do you understand that?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  You also understand that, under some

5  circumstances, you and the government may have a right to

6  appeal the sentence that I impose, and that a

7  Court of Appeals could review my sentence on the grounds of

8  its unreasonableness.  You understand that, right?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  You've also been informed, have you

11  not, by your counsel that parole has been abolished in the

12  federal system; and if you're sentenced to prison, you will

13  not be released on parole on any time.

14  Do you understand that?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  All right.

17        Now, has anyone threatened you or in any way

18  forced you to enter into this plea -- well, there isn't a

19  plea here -- well, entered into a decision to plead guilty

20  to this charge?  Has anyone threatened you or forced you?

21             THE DEFENDANT:  No, Your Honor.

22             THE COURT:  All right.

23        Has anyone made any specific prediction or promise

24  to you as to what your sentence might be in this case?

25             THE DEFENDANT:  No, Your Honor.

1          THE COURT:  Do you understand that the sentence is

2    up to the Court alone, but only after a presentence report

3    has been prepared which you and your counsel and the

4    government's counsel will all have an opportunity to review,

5    evaluate, and object to any factual legal conclusions

6    contained.  You understand that, don't you?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  All right.  I'm going to ask you to

9    have a seat for a minute.  I'm going to ask the government

10   to make a presentation as to what evidence it believes it

11   would have proven if this case had gone to trial.  Listen

12   carefully; and when they're done, I'll have a few brief

13   questions for you with respect to what they go over, okay?

14   So you have a seat, and I'll have you back up in a minute or

15   so.

16         Ms. Goldbarg.

17         MS. GOLDBARG:  Your Honor, after two days of

18   proffering evidence to the Court in pretrial proceedings,

19   the government is confident that it would have been able to

20   prove that beginning in or around January of 2000, up until

21   the date that the indictment was returned in 2012, in Mexico

22   and elsewhere, the defendant was part of a conspiracy as

23   read in the indictment.

24         The object of that conspiracy was to distribute at

25   least 5 kilograms of cocaine and at least 50 grams of

1  methamphetamine, knowing and intending that such substances

2  would be unlawfully imported into the United States, and the

3  statutes are cited in the indictment.

4        More specifically, with regards to the factual

5  proffers of proposed witnesses and evidence, the government

6  is confident it would have been able to prove that between

7  1990 up until the defendant's arrest in January of 2008 by

8  Mexican authorities, this defendant was one of the leaders

9  of the Beltran Leyva drug-trafficking organization.  This

10 organization is a global criminal enterprise; it is

11 responsible for importing multiton quantities of both

12 cocaine and methamphetamine into the United States.

13       The evidence that the government would have

14 presented at trial would have also shown that some of those

15 drugs eventually made it to Washington, D.C.

16       The government, through the witnesses that it was

17 going to call at trial, would have been able to prove that

18 the defendant and his organization obtained tonnage,

19 literally tons of quantities of cocaine, from South American

20 suppliers.  The defendant and his co-conspirators helped to

21 finance these massive cocaine shipments.  These shipments

22 started in Colombia, and they were sent to Mexico via air,

23 land, and sea.

24       Once the cocaine reached the shores of Mexico, the

25 cocaine was transported by the defendant and his

1    organization to central key points in Mexico.  One of those

2    key points was in Culiacán; Sinaloa, Mexico.

3            The defendant helped his organization control

4    Culiacán.  It was a central hub through which much of the

5    tonnage quantities of cocaine was sent to the United States.

6            Culiacán was also one of the central points where

7    the organization would collect literally billions of dollars

8    worth of drug proceeds for the drugs that were sold in the

9    United States.

10           Additionally, the defendant and his organization

11   produced methamphetamine in Mexico, which was then

12   distributed in the United States.

13           The government also presented evidence that, aside

14   from the drug trafficking and the movement of drugs, the

15   organization also carried out acts of violence.  These acts

16   of violence included murders, kidnappings, torture, violent

17   acts of debt collection.  Those acts of violence were done

18   in order to sustain the drug-importation operation.

19           The government's evidence, we strongly believe,

20   would have also indicated that this organization made

21   payments to public officials, and the purpose of that was to

22   ensure that the defendants and the organization's drugs

23   would move through Mexico uninhibited.

24           Also presented in the government's proffer was

25   that during the course of the defendant's involvement in the

1    conspiracy, there were several shipments of cocaine that

2    were intended to be -- make it to the shores of Mexico and

3    then to the United States that were seized by law

4    enforcement authorities in several countries.

5            The government presented evidence in the form of

6    witnesses, as well as documentary evidence, that there were

7    at least seven separate seizures that totaled over

8    50,000 kilograms of cocaine, and it was part of this same

9    seizure.  And the government would have been able to

10   introduce those seizures at trial.

11           Your Honor, this is just a brief summary of the

12   evidence that the government proffered during two days of

13   pretrial hearings, which we believe would satisfy the

14   elements of the offense.  If you have any more questions,

15   we're happy to answer them.  Thank you.

16           THE COURT:  Thank you.

17           You can come back up, Mr. Balarezo, with your

18   client.

19           Now, Mr. Beltran Leyva, you've heard the

20   government's summary of what it would have proved if this

21   case had gone to trial.  Let me ask you a few brief

22   questions with regard to that summary.

23           First, between 2000 and 2012, did you unlawfully,

24   knowingly and intentionally combine, conspire, confederate

25   and agree, together with other co-conspirators, to

1  unlawfully, knowingly, and intentionally distribute

2  5 kilograms or more of a mixture or substance containing a

3  detectable amount of cocaine, which is a narcotic drug and

4  controlled substance, intending or knowing that such cocaine

5  would be unlawfully imported into the United States in

6  violation of Title 21 United States Code?

7          Did you do that?

8          THE INTERPRETER:  Yes, Your Honor.  I would help

9  my brother, Artura.  And I conspired with my brother,

10 Artura.

11         THE COURT:  Okay.

12         Let me ask you this second:  Between 2000 and

13 2012, did you unlawfully, knowingly, and intentionally

14 combine, conspire, confederate, and agree, together with

15 other coconspirators, to unlawfully, knowingly and

16 intentionally distribute 50 grams or more of a mixture and

17 substance containing a detectable amount of methamphetamine,

18 which is a narcotic drug and controlled substance, intending

19 and knowing that such methamphetamine would be unlawfully

20 imported into the United States in violation of Title 21

21 United States Code?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Okay.

24         A little more specifically, let me ask you this:

25 Between 2000 and your arrest on January 2008 by Mexican

1   authorities, were you not one of the leaders of the Beltran

2   Leyva organization?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  You were not a leader?

5          Were you a member of the organization?

6          THE DEFENDANT:  I was a member of the Beltran

7   Leyva organization.

8          THE COURT:  All right.

9          MR. BALAREZO:  Your Honor, if I just may interject

10  for one second.

11         THE COURT:  No.  This is -- no.

12         MR. BALAREZO:  Very well.

13         THE COURT:  Now, let me ask you this:  During that

14  time between 2000 and your arrest in 2008, did that

15  organization that you're a member of, to your knowledge,

16  help to finance shipments from Colombia, of cocaine, which

17  were transported to Mexico, with the intention of them later

18  being transported through Mexico to the United States?

19         THE DEFENDANT:  I would just help my brother,

20  Artura, sell it in Culiacán, with the knowledge that it

21  would get to the United States.

22         THE COURT:  All right.

23         So your organization was helping to finance those

24  shipments from Colombia to Mexico for transshipment to the

25  United States.  Is that a fair description?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Okay.  And let me ask you one other

3    question:  During the same time period we've been talking

4    about, would it be accurate to say that your organization

5    also produced methamphetamine in Mexico for distribution,

6    ultimately, in the United States?  To your knowledge,

7    is that an accurate statement?

8          THE DEFENDANT:  Yes, Your Honor, I did have

9    knowledge of that as well.

10          THE COURT:  Okay.

11          So you're pleading guilty today because you are,

12    in fact, guilty; is that right?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  And you're pleading guilty

15    voluntarily; is that right?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Now, do you have any questions that

18    you'd like to ask your counsel or the Court or both of us

19    before I accept your plea, recognizing, once I accept it,

20    I'm not likely to allow you to withdraw it.

21          So if you have any questions for your counsel or

22    the Court or both of us, this would be the time to ask them.

23          THE DEFENDANT:  Everything is fine, Your Honor.

24          THE COURT:  Very good.

25          So you still want to enter your plea of guilty;

1    is that right?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Okay.

4              It's the finding of the Court that the defendant

5    is aware of his rights under the Constitution of the

6    United States to a right for trial by jury and a right

7    against self-incrimination, and that he has chosen to waive

8    those rights.

9              The Court finds that he is aware of the maximum

10   possible punishment and the mandatory minimum for the

11   offense to which he is pleading guilty.

12             The Court finds that his plea of guilty is

13   knowing, voluntary, and supported by an independent basis,

14   in fact, as to each of the essential element of the offense.

15             So I'll accept your plea and enter a judgment of

16   guilty to Count 1 of the information as I've previously

17   indicated, with the motion that's been granted excised from

18   it, under the circumstances.

19             MR. BALAREZO:  Your Honor, just to clarify,

20   Count 1 of the indictment.

21             THE COURT:  Count 1 of the indictment.

22             MR. BALAREZO:  Not information.

23             THE COURT:  Of the indictment.

24             MR. BALAREZO:  Okay.

25             THE COURT:  Any reason not to set a sentencing

1   date in this case, Ms. Goldbarg?

2           MS. GOLDBARG:  No, Your Honor.

3           THE COURT:  All right.

4           MR. BALAREZO:  Can he sit down?

5           THE COURT:  He can sit down, yes, he can.

6           It normally takes about 75 days or so.  I think we

7   might, because of Mexico's -- it might be a little bit more

8   complicated in this situation, so I think we'll allow at

9   least a few extra days or an extra week or so.

10          If you could check your calendar, Counsel, for

11  June, early June, that would get us to around 90 days.

12          June 6th, take a look at that date.

13          MS. GOLDBARG:  Your Honor, that date is fine for

14  the government.  Thank you.

15          MR. BALAREZO:  June 6th, Your Honor?

16          THE COURT:  Yes.  It's a Monday.

17          MR. BALAREZO:  If I could just consult with my

18  co-counsel?

19          THE COURT:  Sure.  Go ahead.

20          (Pause)

21          MR. BALAREZO:  Your Honor, would the Court

22  consider doing it on a Friday?  Mr. Purpura will be in trial

23  and --

24          THE COURT:  Nope.

25          MR. BALAREZO:  Then I guess that date is fine.

1           THE COURT:  Fine.

2           All right.  2:30, Counsel.

3           I'd like your sentencing memorandum in no later

4   than the preceding Tuesday.  It's just about a week prior to

5   the sentencing, so I have time to review it.

6           Remember, in the sentencing memorandum, you need

7   to focus on the 3553 factors.  That's what the Court would

8   be looking to each side for your input on in regard to

9   fashioning an appropriate sentence in this case.

10          Now, I appreciate fully, of course, that the

11  government is probably going to want the Court to make some

12  findings, lower standard than beyond a reasonable doubt, as

13  a basis for its sentence.

14          So I expect each side, in that, to be specific and

15  having whatever objections it wishes to or anticipates

16  wanting to make put forth in their pleadings as well so

17  I can have a complete view in advance of where the

18  differences of opinion are between the sides in that regard.

19  I don't want to turn the sentencing on the sixth into an

20  all-day affair.

21          Indeed, I think I said 2:30, so I'm thinking we

22  can do this, hopefully, within an hour and a half to two

23  hours, at the most.  So I'm hoping we can do it under those

24  circumstances.

25          Do you have a document that I need to sign?

```
1              (The Deputy Clerk conferred with the Court off the

2    record.)

3              THE COURT:  Thank you.

4              I think, Counsel, that that makes the motion of

5    the defense too for a continuation of the trial moot, so the

6    Court will deny that as moot.

7              Are there any questions for either the defense or

8    the government that they have at this time?

9              MR. BALAREZO:  No, Your Honor.

10             MS. GOLDBARG:  No, Your Honor.

11             MR. BALAREZO:  Your Honor, may I just approach

12   briefly on an ex parte matter?  It will take two seconds.

13             THE COURT:  Okay.

14             (Bench conference sealed.)

15             MR. BALAREZO:

16

17

18

19

20

21             THE COURT:

22

23             MR. BALAREZO:

24

25             THE COURT:
```

1

2          MR. BALAREZO:

3

4          THE COURT:

5

6          (Open court.)

7          All right, Counsel, stand in recess.

8          DEPUTY CLERK:  All rise.

9          This Honorable Court now stands in recess until

10   the return of court.

11          (Proceedings concluded at 12:58 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.


Date: May 14, 2016_____        /S/__William P. Zaremba_____

                                   William P. Zaremba, RMR, CRR