# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES of AMERICA,** | : | |
| | : | |
| **v.** | : | **Criminal No.12-0184(RJL)** |
| | : | **Sentencing:  April 5, 2017** |
| **ALFREDO BELTRÁN LEYVA,** | : | |
| | : | |
| *Defendant.* | : | |

## DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING

Defendant Alfredo Beltrán Leyva ("Beltrán Leyva), by and through his undersigned counsel, respectfully submits this Supplemental Memorandum in Aid of Sentencing. Mr. Beltrán Leyva will come before the Court on April 5, 2017, for sentencing after pleading guilty to the one count charged in the indictment, Conspiracy to Distribute Five Kilograms or More of Cocaine and 50 Grams or More of Methamphetamine for Importation Into the United States in violation of 21 U.S.C. §§ 959, 960 & 963.  For the reasons set forth below and in his initial Memorandum in Aid of Sentencing, Mr. Beltrán Leyva respectfully requests that this Honorable Court reject the government's request for a sentence of life in prison and sentence him to a term of 25 years.

## I.      Sentencing Enhancements

The Court has found by a preponderance of evidence that various sentencing enhancements apply, bringing the total offense level to 50.  This guideline level corresponds with a guideline sentence of life imprisonment.  Although the Court made its findings, Mr. Beltrán Leyva submits that evidence presented and the facts of this case are insufficient to support a life sentence.

The testimony offered by the government consisted of 2 agents' regurgitation of information allegedly provided by 3 cooperators during proffer sessions.  Both agents testified that they merely repeated what the cooperators said, took their information at face value and did nothing to corroborate the information.  There was no sworn testimony or statements from the cooperators themselves.

The local jury instructions warn that the testimony of cooperators should be "considered with caution."[1]  In this case, the agents' recitation of unsworn cooperator proffers should be considered with even more caution.  Mr. Beltrán Leyva concedes that the Court may consider hearsay evidence for sentencing; however, that evidence must have some indicia of reliability to support it.[2]  The Commentary to Guideline § 6A1.3 specifically states in relevant that

> In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial.  *Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy.*  Reliable hearsay evidence may be considered.  Out-of-court declarations by an unidentified informant may be considered where there is good cause for the non-disclosure of the informant's identity and there is sufficient corroboration by other means.  *Unreliable allegations shall not be considered.*

On the record before it, although the Court made its determination as to the applicability of the various enhancements sought by the government, the Court has the discretion as to what weight to give the information when fashioning a sentence.

## II.    Acceptance of Responsibility

Under U.S.S.G. §3E1.1(a), "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels."  "If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of

---

[1]       *See, e.g.,* Red Book Instructions 2.22, 2.22a, 2.24.
[2]       *See United States v. Bras*, 483 F.3d 103, 108 (D.C. Cir. 2007).

subsection (a) is level 16 or greater, and upon motion of the government stating that the

defendant has assisted authorities in the investigation or prosecution of his own misconduct by

timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the

government to avoid preparing for trial and permitting the government and the court to allocate

their resources efficiently, decrease the offense level by 1 additional level."[3]

Furthermore, the Application Notes to U.S.S.G. §3E1.1 states in relevant part

1. In determining whether a defendant qualifies under subsection (a), appropriate
considerations include, but are not limited to, the following:

(A)  truthfully admitting the conduct comprising the offense(s) of conviction,
and truthfully admitting or not falsely denying any additional relevant conduct
for which the defendant is accountable under §1B1.3 (Relevant Conduct). Note
that a defendant is not required to volunteer, or affirmatively admit, relevant
conduct beyond the offense of conviction in order to obtain a reduction under
subsection (a). A defendant may remain silent in respect to relevant conduct
beyond the offense of conviction without affecting his ability to obtain a
reduction under this subsection. However, a defendant who falsely denies, or
frivolously contests, relevant conduct that the court determines to be true or has
acted in a manner inconsistent with acceptance of responsibility; . . .[4]

At the plea hearing, the Court placed Mr. Beltrán Leyva under oath and engaged

in the following colloquy:

THE COURT: Thank you.  You can come back up, Mr. Balarezo, with your
client.

Now, Mr. Beltrán Leyva, you've heard the government's summary of what it
would have proved if this case had gone to trial. Let me ask you a few brief
questions with regard to that summary.

First, between 2000 and 2012, did you unlawfully, knowingly and intentionally
combine, conspire, confederate and agree, together with other co-conspirators, to
unlawfully, knowingly, and intentionally distribute  5 kilograms or more of a
mixture or substance containing a detectable amount of cocaine, which is a
narcotic drug and controlled substance, intending or knowing that such cocaine
would be unlawfully imported into the United States in violation of Title 21

---

[3]    U.S.S.G. §3E1.1(b).
[4]    U.S.S.G. §3E1.1 (Application Note 1A).

United States Code?

Did you do that?

THE INTERPRETER: Yes, Your Honor. I would help my brother, [Arturo]. And I conspired with my brother, [Arturo].

THE COURT: Okay.

Let me ask you this second: Between 2000 and 2012, did you unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree, together with other coconspirators, to unlawfully, knowingly and intentionally distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, which is a narcotic drug and controlled substance, intending and knowing that such methamphetamine would be unlawfully imported into the United States in violation of Title 21 United States Code?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay.  A little more specifically, let me ask you this:

Between 2000 and your arrest on January 2008 by Mexican authorities, were you not one of the leaders of the Beltran Leyva organization?

THE DEFENDANT: No, sir.

THE COURT: You were not a leader?  Were you a member of the organization?

THE DEFENDANT: I was a member of the Beltran Leyva organization.

THE COURT: All right.

MR. BALAREZO: Your Honor, if I just may interject for one second.

THE COURT: No. This is -- no.

MR. BALAREZO: Very well.

THE COURT: Now, let me ask you this: During that time between 2000 and your arrest in 2008, did that organization that you're a member of, to your knowledge, help to finance shipments from Colombia, of cocaine, which were transported to Mexico, with the intention of them later being transported through Mexico to the United States?

THE DEFENDANT: I would just help my brother, [Arturo], sell it in Culiacán, with the knowledge that it would get to the United States.

THE COURT: All right.

So your organization was helping to finance those shipments from Colombia to Mexico for transshipment to the United States. Is that a fair description?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. And let me ask you one other question: During the same time period we've been talking about, would it be accurate to say that your organization also produced methamphetamine in Mexico for distribution, ultimately, in the United States? To your knowledge,  is that an accurate statement?

THE DEFENDANT: Yes, Your Honor, I did have knowledge of that as well.

THE COURT: Okay.

So you're pleading guilty today because you are, in fact, guilty; is that right?

THE DEFENDANT: Yes, Your Honor.[5]

In response to each of the Court's questions Mr. Beltrán Leyva knowingly and truthfully admitted the conduct comprising the offense of conviction and did not falsely deny any additional relevant conduct for which he is accountable under §1B1.3.[6]  Here, Mr. Beltrán Leyva has pled guilty to the one count of a "non-speaking" indictment that merely states the times of the conspiracy and statutory boilerplate language.  He is "not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a)."[7]  Furthermore, he is "may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection."[8]  Finally, there is no evidence on the record that he has falsely denied, or frivolously contested, relevant conduct that the court determines to be true or has acted in a manner inconsistent with acceptance of responsibility.[9]

---

[5]      Plea Hr'g Tr. At 17:16 – 20:13.

[6]      *See* U.S.S.G. §3E1.1 (Commentary).
[7]      *Id.*
[8]      *Id*.
[9]      *Id.*

The Guidelines further make clear that the adjustment for acceptance of responsibility is "not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.  Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilty …."[10]

Here, although Mr. Beltrán Leyva initially intended to exercise his constitutional right to a trial, he pled guilty once the Court denied his motion relating to the Rule of Specialty and for the reasons stated in his Motion to Withdraw Guilty Plea.  He decided to enter a guilty plea *before* trial and did not put the government and the Court through the burden of an expected three-month trial.  In fact, he realized that he did not want to go to trial and face life in prison if convicted and decided that pleading guilty would at least give him the possibility of one day returning to his country and his family.  If the Guidelines contemplate a downward adjustment for acceptance of responsibility for a defendant who went to trial, there is no reason why the Court should not grant him the adjustment in this case where no trial occurred and he accepted responsibility.[11]

As noted previously, Mr. Beltrán Leyva was actively litigating his assertion that he had been extradited from Mexico to face charges related to the drug seizures in Washington State and for a period shorter than the conspiracy charged in the indictment.  The government

---

[10]    U.S.S.G. §3E1.1 (Application Note 2).

[11]    *See United States v. Jones*, 997 F.2d 1475, 1478 (D.C. Cir. 1993) (*en banc*) (the reduction should normally be denied to the "defendant who does not plead guilty"; the *Jones* court granted a 2-level reduction to defendant who actually went to trial), *cert. denied*, 510 U.S. 1065 (1994)).

argues that because he moved to withdraw his plea of guilty, that motion is a "statement that he did not wish to let the guilty plea stand" and thus he should not receive credit for acceptance of responsibility.  However, the Court must consider that it had denied his Motion to Reconsider Motion to Enforce Rule of Specialty or, Alternatively, to Limit Scope of Conspiracy because his unconditional guilty plea "waived his challenges to the indictment."  (Doc. 225 at 2).  Mr. Beltrán Leyva then moved to withdraw his guilty plea to preserve the legal argument pertaining to the Rule of Specialty.  Thus, the Court should find that he met the requirement for a reduction for acceptance of responsibility.[12]

### III.    Sentencing disparities

The government cherry picks from the cases cited by the defense to demonstrate that other similar cases have resulted in sentences lower than life.  In fact, the government argues that the "cases Defendant cites do not involve similarly situated defendants and are factually distinct from the instant case."  (Doc. 242 at 9).  The government then completely ignores the following cases cited:

In *United States v. Diego Montoya*, 09-CR-20665 (S.D. Fla. 2009) the defendant was the undisputed leader of Colombia's North Valley Cartel; was directly responsible for importing innumerable tons of cocaine into the United States; was directly responsible for the deaths of hundreds in Colombia; was responsible for the death of at least one government informant and was charged in at least three separate indictments.[13]  Montoya pled guilty and was sentenced to a term of 45 years.[14]  Other high-profile Mexican traffickers have been sentenced to

---

[12] After he pled guilty, the government represented that it did would not object to the reduction for acceptance of responsibility and that it would move for a reduction of an additional level.

[13]        *See* Exh.13; Factual Proffer in Support of Guilty Plea.

[14]        *See* Exh 14; Judgment in a Criminal Case.

less time than the government requests.  For example: *United States v. Osiel Cardenas Guillen*, 00-CR-118 (S.D. Tex. 2010) (defendant was the leader of the Gulf Cartel that allied itself with the Zetas; was responsible for importing tons of cocaine into the United States and much violence in Mexico; sentenced to 25 years after a plea); *United States v. Hector Palma Salazar* (C.D. Cal. 1995) (defendant was a co-founder of the Sinaloa Cartel with Joaquin "Chapo" Guzman; was responsible for importing thousands of kilos of cocaine into the United States; sentenced to 26 years after a plea; released in June 2016); *United States v. Benjamin Arellano Felix*, 97-CR-2520 (S.D. Cal. 2012) (defendant was leader of the Tijuana Cartel; responsible for shipping thousands of kilos of cocaine to the United States; sentenced to 25 years after a guilty plea).  These similarly-situated defendants who pled guilty were sentenced to less time than sought here by the government.  The Court must consider these sentences in fashioning a sentence for Mr. Beltrán Leyva.

## IV. Credit for time served

Mr. Beltrán Leyva respectfully urges the Court to give him full credit for the time he has been incarcerated since January 28, 2008.  The government has stated that his arrest was "not related to the instant case."[15]  The government's assertion is without merit.  The Mexican Ministry of Foreign Affairs, in its Extradition Order, specifically stated

> Accordingly, *this Secretariat finds that, just as was laid out in the above referenced Judicial Order of 10 June 2008, the existence of an organization of three or more individuals whose purpose was to commit drug trafficking crimes in an ongoing manner was corroborated*; [the organization] was led by JOAQUÍN GUZMÁN OERA, alias EL CHAPO GUZMÁN, ARTURO BELTRÁN LEYVA, alias EL BARBAS or EL BARBITAS or ALFA, HÉCTOR BELTRÁN LEYVA, alias EL H, ISMAEL ZAMBADA GARCÍA, alias EL MAYO ZAMBADA, JUAN JOSÉ ESPARRAGOZA MORENO, alias EL AZUL; [the organization] has ties to the Sinaloa and Juárez Cartels; in order to fulfill its objectives, [the members] bribed authorities from various fields (police, civilians, military, etc.);

---

[15]     Gov. Sent. Memo. at 2.  The government also argues that the weapons he possessed at his arrest support an enhancement for possession of a weapon because he was "an active member of the drug conspiracy."  *Id.*

possessed and trafficked narcotics and, in general, [committed] those acts which led to the commission of various crimes against public health (and even, as was seen, acted as the custodians of resources derived from said criminal enterprise); that said criminal organization exhibited characteristics of an ongoing/permanent nature in the states of Baja California, Sinaloa, Nayarit and Colima; that at the orders of the leadership referenced herein, [the organization] collaborated in various drug trafficking related activities, such as receiving drug shipments coming from Colombia and, in the case of losses, coordinating efforts to search for and locate them for recovery, safeguarding their passage to the northern border of the Mexican Republic so they might subsequently be brought into the United States of America and sold there.

As regards the foregoing, in the above referenced 10 June 2008 Ruling on Appeal against **ALFREDO BELTRÁN LEYVA alias "MOCHOMO"** - which appears in criminal record 487/2008 and was issued in response to the appeal filed regarding the 29 January 2008 constitutional deadline order handed down in criminal case number 387/2012-VI-A, which went before the Sixth District Judge for Federal Criminal Cases/Proceedings in the State of Jalisco - *the person being sought is charged with conduct related to a criminal organization about which there is information for the years 1996 to January 2008, the date of his apprehension by Mexican authorities.* [This is] an organization in which his brother, ARTURO BELTRÁN LEYVA, alias EL BARBAS or EL BARBITAS, participated, among other persons. *Consequently, this Secretariat finds that only the first part of the facts reported by United States authorities in the current request for extradition against ALFREDO BELTRÁN LEYVA alias "MOCHOMO," refer to said criminal organization*, indicating the following:

> An investigation conducted by United States law enforcement authorities revealed that as of the year 2000 **ALFREDO BELTRÁN LEYVA** was involved in the illegal distribution and importation of drugs, which were transported from Colombia for their final distribution in the United States of America.
>
> **ALFREDO BELTRÁN LEYVA**, the younger brother of Arturo Beltrán Leyva, the founder of the Beltrán Leyva Cartel who, until his death in the year 2009 was one of the most prolific drug traffickers in Mexico, along with his other brother, Héctor Beltrán Leyva, worked for his brothers' organization.
>
> At the beginning, **ALFREDO BELTRÁN LEYVA** was in charge of coordinating the unloading of large shipments of cocaine coming from Colombia; later, he was promoted and began to work as one of the main assistants to Arturo Beltrán Leyva, and the role of the person being sought [for extradition] consisted of safeguarding the shipment and distribution for sale of thousands of kilograms of cocaine that were introduced into the United States of America.

*Therefore, the necessary legal requirements have not been met for extradition of the person sought, to be prosecuted for criminal conspiracy from the year 1996 to the month of January 2008* in the referenced criminal organization led by Joaquín Guzmán Loera, alias El Chapo Guzmán, Arturo Beltrán Leyva, alias El barbas or El barbitas or Alfa, Héctor Beltrán Leyva alias El H, Ismael Zambada García, alias El Mayo Zambada, Juan José Esparragoza Moreno, alias el Azul, who has links to the Sinaloa and Juárez Cartel, [and organization] dedicated to receiving drug shipments from Colombian and, in the case of losses, coordinating efforts to search for and locate them for recovery, safeguarding their passage to the northern border of the Mexican Republic so they might subsequently be brought into the United States of America and sold there. [This is not considered appropriate] given that [the person sought] is already being prosecuted for his participation in said criminal organization for the time period indicated, under criminal case number 387/2012-VI-A, which continues against him before the Sixth District Judge for Federal Criminal Matters in the State of Jalisco*. The foregoing takes into account the following ruling by the Fifth District Judge for Federal Criminal Matters for the Federal District:* (underlined/italicized emphasis added)

> *A comparative analysis of the **facts** alleged against **ALFREDO BELTRÁN LEYVA** alias "**MOCHOMO**," specifically in paragraphs I) and II) that appear above, concludes that **they are the same**, as the following similarities are clearly evident in a reading of the texts*:

| *Extradition file 8/2012* | *Case 387/2012-VI-A* |
|---|---|
| *1. From **the year two thousand to January of two thousand eight** (The latter referring to time period in which the extraditable individual was detained based on the facts set forth in criminal case 387/2012-VI-A, on the docket of the Sixth District Court for Federal Criminal Matters in the State of Jalisco.* | *1. From **nineteen hundred ninety-six to the twenty-first of January of two thousand eight.*** |
| *2. Worked for the **organization of his brothers, Arturo and Héctor**.* | *2. Was a member of the **organization led by his brothers Arturo and Héctor, among others.*** |
| *3. Was in charge of **coordinating** the unloading of large **shipments of** | *3. **Received** shipments of drugs **(cocaine) coming from*** |

| | |
|---|---|
| *cocaine coming from Colombia.* | *Colombia and, in the case of lost shipments, coordinated* efforts to search for and locate them so they could be recovered. |
| *4. Later, he began to work as one of the main assistants to his brother Arturo and **his role was to safeguard the shipment and distribution for sale of thousands of kilograms of cocaine that were introduced into the United States of America**.* | ***4. Safeguarded the transfer of the drugs (cocaine) to the northern northern [sic] border of the Mexican Republic for their subsequent introduction into the United States of America*** *for sale there.* |

(Doc. 197; Exh. 4 -  MMFA Ruling at 156 - 157) (quoting Fifth Federal District Court) (emphasis in original) (excerpt of original in Spanish with English translation).

Title 18 U.S.C. § 3585(b) states that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences – (1) *as a result of the offense for which the sentence was imposed*; …"  The Bureau of Prisons' (BOP) regulations state that "if the federal defendant has been in pre-sentence state or foreign custody *on essentially the same charges as federal charges*, credit shall also be given even though a federal detainer may not have been on file during that time."[16]

It is evident that the case for which he was arrested in Mexico in January 2008, pertains to his participation in a criminal organization involving Mr. Beltrán Leyva and his brother Arturo that was dedicated to drug trafficking since at least 1996.  In fact, it also states that Mr. Beltrán Leyva had been involved in the distribution and illegal importation of drugs from Colombia for the ultimate distribution in the United States since approximately 2000.  In effect, he was charged and detained in Mexico for the same conduct and time frame as charged

---

[16]     *BOP Manual on foreign incarceration credit*, CN-03, June 30, 1997, Chapter 6, p.7.

in this case.[17]  Therefore, Mr. Beltrán Leyva respectfully requests that the Court apply credit for the entire time that he has been in custody since January 28, 2008.

### V.      Forfeiture

The indictment in this case included a forfeiture allegation against Mr. Beltrán Leyva and the government now argues that the Court should impose a money judgment in the amount of $10,000,000.00 (ten billion dollars).  The government must prove the amount of the money judgment by a preponderance of the evidence.  *See United States v. Roberts*, 660 F.3d 149, 166 (2nd Cir. 2011) (using a preponderance of the evidence standard to calculate the money judgment); *United States v. Pierre*, 484 F.3d 75, 86 (1st Cir. 2007) (holding that the government may use "either direct or circumstantial evidence" to establish the amount of the money judgment by a preponderance of the evidence); *United States v. Lewis*, 791 F. Supp. 2d 81, 94-95 (D.D.C. 2011) (court calculated money judgment based on a finding by a preponderance of the evidence).

In determining the amount of a money judgment, the Court may consider any evidence it deems reliable, including hearsay.  *See United States v. Ali*, 619 F.3d 713, 720 (7th Cir. 2010) (holding that because forfeiture is part of sentencing, less stringent evidentiary standards apply in the forfeiture phase of the trial; the evidence need only be "reliable").  The amount sought by the government is pulled from thin air and bears no relation to reality.  In fact, the "evidence" that the government presented was only the testimony of one agent who admitted that the numbers on the forfeiture chart introduced at hearing was based solely on the word of one cooperator.  Even though others mentioned on that chart are government cooperators, the

---

[17]      This was the basis of M. Beltrán Leyva's argument that the Mexican government had limited the scope of the conspiracy for which he could be tried in the United States.  *See* Motion to Enforce Rule of Specialty or, Alternatively to Limit Scope of Conspiracy. (Doc. No. 59).

government did not even bother to attempt to corroborate the information with them.  The

government has failed to produce any reliable evidence to support its outlandish request.

## CONCLUSION

Mr. Beltrán Leyva respectfully requests that the Court impose a sentence of 25

years.  Considering *Booker* and *Hughes* such a sentence is reasonable and sufficient to serve the

criteria laid down in 18 U.S.C. § 3553(a).

**Dated**: Washington, DC
        March 24, 2017                    Respectfully submitted,

                                          **BALAREZO LAW**


                                                /s/
                               By:    _____
                                          A. Eduardo Balarezo
                                          D.C. Bar # 462659
                                          400 Seventh Street, NW
                                          Suite 306
                                          Washington, DC  20004

                                          *Counsel for Defendant Alfredo Beltrán Leyva*




## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 24th day of March 2017, I caused a true and

correct copy of the foregoing Defendant's Supplemental Memorandum in Aid of Sentencing to

be delivered via ECF to the Parties in this case.



                                                /s/
                                       _____
                                          A. Eduardo Balarezo